IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBERT RENNIE, JR., on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>(1) PITNEY BOWES, INC. and<br>(2) PITNEY BOWES GLOBAL FINANICAL SERVICES, LLC,<br><br>Defendants. | Case No. CIV-10-810-C<br>(Formerly Garvin County Case No. CS-2010-148) |

## NOTICE OF REMOVAL

Defendants Pitney Bowes, Inc. (sic)[1] and Pitney Bowes Global Financial Services, LLC ("Defendants"), hereby file this Notice of Removal and, in support thereof, would respectfully show the Court as follows:

    1.    On June 28, 2010, Defendant Pitney Bowes Inc. was served with a Citation and Class Action Petition in a civil action entitled *Robert Rennie, Jr., on behalf of himself and all others similarly situated v. Pitney Bowes, Inc. and Pitney Bowes Global Financial Services, LLC*, Case No. CS-2010-148, in the District Court of Garvin County, State of Oklahoma.  Exhibit 1, Declaration of Joseph C. Kirincich, ¶ 6.  Defendant Pitney Bowes Global Financial Services, LLC has not been served.  This Notice of Removal is filed

---

[1] Defendant Pitney Bowes Inc. was incorrectly named "Pitney Bowes, Inc." (hereinafter, "Pitney Bowes Inc.").

within thirty (30) days as required by 28 U.S.C. §1446(b). A copy of the Class Action Petition is attached as Exhibit 2 in compliance with 28 U.S.C. § 1446(a).

2. Removal is effectuated under 28 U.S.C. §§ 1441, 1446, and 1453.

3. Removal to this district is proper under 28 U.S.C. §§ 1441(a) and 1453(b) because the Western District of Oklahoma embraces Garvin County, where this action was filed. 28 U.S.C. §116(c).

4. In accordance with 28 U.S.C. § 1446(b), a copy of this Notice of Removal will be filed in the Oklahoma District Court of Garvin County as an exhibit to the Notice of Filing Notice of Removal.

5. A certified copy of the docket sheet from the District Court of Garvin County, as of July 23, 2010, is attached hereto as Exhibit 3. The only pleading filed in the District Court of Garvin County is attached hereto as Exhibit 2,[2] and, as of July 23, 2010, there are no other process, pleadings, orders, records, or proceedings in the state court file. Exhibit 3. The only other documents served upon Defendants in this case are attached as Exhibit 5.

6. Defendants remove this action to federal court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453. CAFA provides that a district court has original jurisdiction over a class action with at least 100 plaintiffs, involves an amount in controversy over $5,000,000, and has minimal diversity between the defendant and at least one plaintiff. 28 U.S.C. §§ 1332(d)(2); 1332(d)(5). As explained below and

---

[2] Please note that although Plaintiff's Class Action Petition states that an Exhibit "A" was attached, no such exhibit was filed with the court or served upon Defendants. *See* Exhibit 2, Plaintiff's Class Action Petition filed with the state court, ¶ 7.

supported by the evidence attached hereto, this action meets CAFA's requirements and is the type of sizeable and substantial action that Congress intended to be in federal court when it passed CAFA and expanded this Court's jurisdiction.

7.      This action is not one described in 28 U.S.C. § 1332 or 28 U.S.C. § 1453 as non-removable, and no statutory exception to CAFA jurisdiction applies in this case. *See* 28 U.S.C. §§ 1332(d)(3), (d)(4)(A), (d)(4)(B).

**Minimal Diversity**

8.      CAFA significantly expanded federal diversity jurisdiction, eliminating the complete diversity requirement and requiring only that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

9.      Plaintiff's Class Action Petition confirms that Plaintiff is a resident of Garvin County, Oklahoma and is a citizen of the State of Oklahoma. Exhibit 2, Class Action Petition, ¶ 1.

10.     Defendant Pitney Bowes Inc. was, at the time this action commenced, and still is, a corporation incorporated under the laws of the State of Delaware with its principal place of business in Connecticut. Exhibit 2, Class Action Petition, ¶ 2; Exhibit 1, Declaration of Joseph C. Kirincich, ¶ 3. Defendant Pitney Bowes Global Financial Services, LLC was, at the time this action commenced, and still is, a limited liability company organized under the laws of the State of Delaware with its principal place of business in Connecticut. Exhibit 2, Class Action Petition, ¶ 2; Exhibit 1, Declaration of Joseph C. Kirincich, ¶ 4. Defendant Pitney Bowes Inc. is the only constituent entity of

Defendant Pitney Bowes Global Financial Services, LLC. Exhibit 1, Declaration of Joseph C. Kirincich, ¶ 5.

11. Accordingly, there exists minimal diversity of citizenship between Plaintiff and his purported class and Defendants. *See* 28 U.S.C. §§ 1332(d)(2)(a), 1332(d)(10) (deeming an unincorporated association party to a class action to be a citizen of the state where its principal place of business is located and of the state under whose laws it is organized).

## Amount in Controversy

12. For the reasons explained below, the amount in controversy, determined by aggregating the damages sought by customers leasing postage and/or shipping equipment who were invoiced and paid equipment tax on this equipment to Pitney Bowes Global Financial Services, LLC, exceeds $5,000,000, satisfying the minimal jurisdictional requirement of CAFA. 28 U.S.C. § 1332(d)(2).

13. Plaintiff defines his class, in relevant part, as follows:

> All entities and natural persons domiciled or residing within the State of Oklahoma, who, between June 1, 2005 and the date of certification, leased postage equipment and/or shipping equipment from the Defendant Pitney Bowes Inc.,[3] and who were invoiced and paid equipment tax on this equipment to the Defendant Pitney Bowes Global Financial Services, LLC. Excluded from the class are: (1) Defendants and all directors, officers,

---

[3] Interestingly, Plaintiff himself did not lease from Pitney Bowes Inc., but instead from Pitney Bowes Credit Corporation. Exhibit 1, Declaration of Joseph C. Kirincich, ¶ 8, Exhibit A, p. A1 (Acknowledgment), p. A2 (Acknowledgment), p. A4 (Lease Terms & Conditions, ¶ 1). He only had a service contract with Pitney Bowes Inc. *Id.* Nonetheless, as Plaintiff asserts, Plaintiff and multiple thousands of others were invoiced and paid equipment tax to Pitney Bowes Global Financial Services, LLC. Exhibit 2, Class Action Petition, ¶¶ 9-11. Defendants, for the purposes of this Removal, interpret Plaintiff's class definition to refer to these customers.

agents and employees of Defendants; (2) claims by any person or entity who timely opt outs (sic) of this proceeding; (3) all State and Federal District Court judges and their current spouses."

Exhibit 2, Class Action Petition, ¶ 10.

14. Plaintiff alleges that Defendants overcharged him and the other customers for property tax due on the equipment they leased. Exhibit 2, Class Action Petition, ¶ 9.

15. Plaintiff further contends that these acts constitute "a violation of the Oklahoma Consumer Protection Act, 15 O.S. 751 et seq. (sic), in that said acts constitute unconscionable, deceptive trade practices." Exhibit 2, Class Action Petition, ¶ 23.

16. Based upon this violation, Plaintiff seeks judgment for himself and the other class members of economic losses, attorney fees, and "damages pursuant to 15 O.S. 761.1," among other categories of damages. Exhibit 2, Class Action Petition, p. 7.

17. Okla. Stat. Ann., tit. 15, § 761.1 provides that each violation of the Consumer Protection Act renders the violator liable for a civil penalty "in a sum set by the court of not more than Two Thousand Dollars ($2,000)."[4] Plaintiff's assertion that

---

[4] The statute provides that the penalty is recoverable "in an individual action only." The current statute was drafted as a response to a court decision denying individual consumers the right to pursue claims under the Consumer Protection Act. *See Walls v. American Tobacco Co.*, 11 P.3d 626, 628 (Okla. 2000). Under the interpretation of the old statute, actions could only be brought by the attorney general or district attorneys. *Id.* Given this background, the "individual action" wherein civil penalties are available is a distinction from actions by the attorney general instead of a distinction from class actions, which are nowhere mentioned in the statute. This reading is also consistent with paragraphs C and D of the statute that discuss civil penalties recoverable by the attorney general or district attorneys. Okla. Stat. Ann., tit. 15, § 761.1(C) and (D). Further, this is consistent with another Oklahoma case that assumes that a claim for civil penalties under § 761.1(B) is available in the context of a class action. *Brashears v. Sight 'N Sound Appliance Ctrs., Inc.,* 981 P.2d 1270, 1273-1274 (Okla. Civ. App. 1999). The *Brashears* opinion discusses consumers who are seeking damages in their "individual capacities"

Defendants' actions were "unconscionable," a requirement present nowhere in the act other than as a prerequisite for recovering these civil penalties, further demonstrates that the Class Action Petition makes claim for these penalties. *See* Exhibit 2, Class Action Petition, ¶ 23; Okla. Stat. Ann., tit. 15, § 761.1.

18.     By seeking "damages pursuant to O.S. 761.1," Plaintiff seeks these civil penalties for himself and the other class members for each alleged violation of the Consumer Protection Act.[5]  Exhibit 2, Class Action Petition, p. 7; Okla. Stat. Ann., tit. 15, § 761.1(B).

19.     Where, as here, a plaintiff has not pled the specific amount of damages he seeks to recover,[6] a removing defendant may offer evidence with its removal that, in conjunction with the allegations made in the plaintiff's petition, establishes the amount in controversy. *Laughlin v. Kmart Corp.,* 50 F.3d 871, 873 (10th Cir. 1995).  The defendant must prove these underlying facts by a preponderance of the evidence, and, once such facts are proven, the defendant is entitled to stay in federal court unless it is "legally certain" that less than the minimum jurisdictional amount is in controversy.  *McPhail v. Deere & Co.*, 529 F.3d 947, 954 (10th Cir. 2008).

---

even though the damages being discussed are sought on behalf of a class, indicating that the term "individual" is used to distinguish a claim from one brought by the state instead of from one brought on behalf of a class.  *See id.* at 1274.

[5] Given Oklahoma permits notice pleading and does not require relief to be specifically pled except for special damages, Plaintiff's seeking damages under this statute is sufficient to put civil penalties at issue.  *See Niemeyer v. United States Fidelity & Guaranty Co.*, 789 P.2d 1318, 1320-21 (Okla. 1990).

[6] Notably, Plaintiff has ignored the requirement to plead specifically the amount of damages sought if he contends they are less than the minimum jurisdictional amount under 28 U.S.C. § 1332.  *See* Okla. Stat. Ann., tit. 12, § 2008(A)(2).

20. Importantly, this demonstration concerns what the "plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2008) (Esterbrook, J.). A defendant's requirement is to prove facts that make it "*possible* that the [minimum jurisdictional amount] was in play." *McPhail*, 529 F.3d at 955.

21. Since Plaintiff here pleads that the members of the class he defines suffered an "unconscionable" deceptive trade practice in violation of the Oklahoma Consumer Protection Statute and are therefore entitled to recover under Oklahoma Statute, tit. 15, § 761.1, the amount in controversy on this claim alone can be determined by multiplying the number of persons or entities leasing postage and/or shipping equipment who were invoiced and paid equipment tax on this equipment to Pitney Bowes Global Financial Services, LLC by the maximum civil penalty awardable to each of these plaintiffs for each violation of the Act—such is the damages amount "in play," the amount plaintiff would recover if a class of those customers is certified and he recovers the amounts he seeks on behalf of those customers.

22. Plaintiff's class definition seeks to certify a class for all persons who were invoiced and paid equipment tax between June 1, 2005 and the date of certification. Exhibit 2, Class Action Petition, ¶ 10. This number would necessarily be greater than the number of potential class members who were invoiced and paid such tax from June 25, 2009 to present. There are 4,811 customers (either natural persons or entities) domiciled or residing within the State of Oklahoma, who, between June 25, 2009 and the present,

were invoiced and paid equipment tax on leased postage and/or shipping equipment to Pitney Bowes Global Financial Services, LLC.  Exhibit 4, Declaration of Pamela Fitts, ¶ 4.

23.     Addressing the exclusions contained in Plaintiff's class definition, Pitney Bowes Inc. and Pitney Bowes Global Financial Services, LLC have seventy-six total directors, officers, agents, and employees domiciled or residing within the state of Oklahoma.  Exhibit 1, Declaration of Joseph C. Kirincich, ¶ 7.

24.     The Oklahoma Bar Association maintains a judicial directory containing a listing of all Oklahoma state court judges at the following site:

    http://www.oscn.net/static/JudicialDirectory.pdf.

There are 275 judges in that listing.

25.     Each federal judicial district maintains a website that lists the federal district court judges in that district.  Those lists are maintained on the following three websites:

    http://www.oked.uscourts.gov/

    http://www.okwd.uscourts.gov/chambers.htm

    http://www.oknd.uscourts.gov/okndpublic/main.nsf/index?openform.

There are a total of fifteen judges listed on those sites.

26.     Defendants therefore respectfully request that the Court take judicial notice that the total number of "State and Federal District Court judges and their current spouses" is approximately 580 for the purpose of calculating the amount in controversy and the number of class members.  Exhibit 2, Class Action Petition, ¶ 10.

27.     Thus, even were we to assume that all of Defendants' directors, officers, agents, and employees and all of the state and federal district judges in Oklahoma or their spouses were among those who were invoiced and paid equipment tax during the time period examined,[7] there would still be at least 4,155 persons or entities who leased postage and/or shipping equipment who were invoiced and paid equipment tax on this equipment to Pitney Bowes Global Financial Services, LLC between June 25, 2009 and the present (4,811 - 76 - 580 = 4,155).  *See* Exhibit 4, Declaration of Pamela Fitts, ¶ 4.

28.     If a class of such customers is certified, each of the class members would be asserting a violation of the Oklahoma Consumer Protection Act and seeking a civil penalty up to $2,000 for each violation,[8] the total amount in controversy, looking only at the civil penalty portion of the Oklahoma Consumer Protection Act for the period from June 25, 2009 to present, is therefore $8,310,000 (4,155 X $2,000), well in excess of the

---

[7] It is extremely unlikely that any significant number of these individuals were such customers, but, for the purpose of calculating the amount in controversy and the number of members of the class, it is assumed that all were such customers.  The amount in controversy and the number of class members will thus be higher than the numbers discussed herein.

[8] Of course, a plaintiff is entitled to recover a civil penalty up to $2,000 for "each" violation of the Oklahoma Consumer Protection Act.  Okla. Stat. Ann., tit. 15, § 761.1(B).  The Class Action Petition asserts that the purported overcharges occurred over a period of years which, if Plaintiff can carry the burden of proof under the statute as he asserts he can, would result in arguably multiple violations per class member of the Oklahoma Consumer Protection Act – again, greatly increasing the amount in controversy.  The calculation set forth in paragraph 28 above only assumes one violation per customer.  Further, the calculation in paragraph 28 above only contains the number of persons or entities that were invoiced and paid equipment tax for the period from June 25, 2009 to present.  Again, including the period from June 1, 2005 to present, as pled in the Class Action Petition, would only further increase the amount in controversy.  Exhibit 2, Class Action Petition, ¶ 10.  Likewise, the Oklahoma Consumer Protection Act provides for the recovery of attorney's fees as an element of damages.  *See* Okla. Stat. Ann., tit. 15, § 761.1(A).

$5,000,000 jurisdictional minimum in CAFA removals.[9]  *See* 28 U.S.C. § 1332(d)(2); Exhibit 4, Declaration of Pamela Fitts, ¶ 4.

29.  Other courts confronted with similar situations have used this same method of calculating the amount in controversy.  In *Brill,* the Seventh Circuit considered a class action where the defendant sent 3,800 faxes, allegedly in violation of a statute with a $500 civil penalty per violation that could be increased up to $1,500 per violation.  *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d at 449.  The court determined the amount in controversy by multiplying the number of faxes by the maximum amount of the civil penalty to determine that the amount in controversy exceeded the $5,000,000 threshold, noting that the judge could well award less than $1,500 per fax but that a recovery exceeding $5,000,000 for the class as a whole was not legally impossible.  *Id.*

30.  Similarly, the Fifth Circuit confronted a class action where 4,000 faxes had been sent, allegedly in violation of the same statute and with the same civil penalty available.  *Gene and Gene LLC v. Biopay, LLC*, 541 F.3d 318, 324 (5th Cir. 2008).  Like the Seventh Circuit, the court multiplied the maximum civil penalty by the number of faxes sent based on the possibility that the plaintiff class members could recover those amounts.  *Id.*

31.  Likewise, a United States District Court in California confronted a class action where the plaintiff sought a civil penalty with a $1,000 statutory maximum.  *Korn*

---

[9] Defendants vigorously deny that Plaintiff or any other class members are entitled to such penalties or any other relief or that Plaintiff has properly identified his class, but the question here is what Plaintiff is claiming, not what he will eventually recover.  *Brill,* 427 F.3d at 449.

*v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205-1206 (E.D. Cal. 2008). The court held that to meet CAFA's jurisdictional requirement, "the defendant need only demonstrate that there are at least 5,001 putative class members" ($5,000,000 / $1,000 per violation). *Id.* at 1206. In doing so, the court noted that the plaintiff could not "avoid satisfaction of the amount in controversy by arguing that the class plaintiffs may be awarded less than the statutory maximum." *Id.* at 1206, n.4. Instead, the critical inquiry was the amount placed in controversy by the allegations in the plaintiff's complaint. *Id.*

### Minimum Number of Class Members

32. For a class action to be removable under CAFA, there must be at least 100 members of the class. 28 U.S.C. § 1332(d)(5).

33. For the purposes of calculating this minimum, "class members" are the persons who fall within the definition of the class proposed by the plaintiff. 28 U.S.C. § 1332(d)(1)(D).

34. Plaintiff asserts that the class is comprised of "thousands of members." Exhibit 2, Class Action Petition, ¶ 11.

35. Further, based upon a review of Defendants' records, there are well in excess of 100[10] persons or entities who leased postage and/or shipping equipment who

---

[10] There are 4,155 such persons or entities who leased postage and/or shipping equipment who were invoiced and paid equipment tax on this equipment to Pitney Bowes Global Financial Services from June 25, 2009 to the present, excluding those Plaintiff carves out from his class. *See* Exhibit 4, Declaration of Pamela Fitts, ¶ 4; ¶ 27, *supra*. There are, of course, more persons or entities when the time period is expanded back to June 1, 2005, as in Plaintiff's class definition. *See* Exhibit 2, Class Action Petition, ¶ 10.

were invoiced and paid equipment tax on this equipment to Pitney Bowes Global Financial Services, LLC.  *See* Exhibit 4, Declaration of Pamela Fitts, ¶ 4.

WHEREFORE, for the reasons set forth above, Defendants Pitney Bowes Inc. and Pitney Bowes Global Financial Services, LLC pray that this Court assume full jurisdiction of this action and for such other and further relief to which they are entitled.

                Respectfully Submitted,

                By: s/ Bobby G. Pryor
                    Bobby G. Pryor
                    Texas State Bar No. 16373720

                PRYOR & BRUCE
                302 N. San Jacinto
                Rockwall, Texas 75087
                Telephone (972) 771-3933
                Facsimile   (972) 771-8343
                Email:  bpryor@pryorandbruce.com

By: s/Michael W. Brewer     s/Bobby G. Pryor
   (*Signed by Filing Attorney with permission*)
   Michael W. Brewer
   OBA No. 11769

HILTGEN & BREWER, P.C.
One Benham Place, 8th Floor
9400 North Broadway Extension
Oklahoma City, OK 73114
Telephone:  (405) 605-9000
Facsimile:  (405) 605-9009
Email:  mwbrewer@hiltgenbrewer.com


Attorneys for Defendants Pitney Bowes Inc. and Pitney Bowes Global Financial Services, LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of July, 2010, the foregoing was filed with the Court Clerk for the United States District Court for the Western District of Oklahoma and that a true and correct copy was mailed United States first class mail, return receipt requested to:

Terry W. West, Esq.
Bradley C. West, Esq.
Gregg W. Luther, Esq.
The West Law Firm
124 W. Highland- P.O. Box 698
Shawnee, Oklahoma 74802-0698
*Counsel for Plaintiff Robert Rennie, Jr.*

Brett Agee, Esq.
Garvin, Agee, Carlton & Mashburn
101 E. Grant Avenue – P.O. Box 10
Pauls Valley, Oklahoma 73075-0010
*Counsel for Plaintiff Robert Rennie, Jr.*

s/ Bobby G. Pryor